UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENERGY BRANDS INC. d/b/a GLACÉAU,<br><br>                Plaintiff,<br><br>       v.<br><br>ECOSENTIALS LLC,<br><br>                Defendant. | 11 Civ. 6940 (DLC)<br><br>ECF CASE |

# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## APPLICATION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Michael C. Lasky (mlasky@dglaw.com)
Neal H. Klausner (nklausner@dglaw.com)
Shirin Keen (skeen@dglaw.com)
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019
Telephone: (212) 468-4800
Facsimile: (212) 468-4888

Michael J. Curley
(michael.curley@quarles.com)
Quarles & Brady LLP
1 S Church Ave., Ste 1700
Tucson, Arizona 85701-1621
Telephone: (520) 770-8768
(*Pro hac vice* admission application to be filed)

*Attorneys for Defendant Ecosentials LLC*

# **TABLE OF CONTENTS**

Introduction ............................................................................................................................... 1

Argument .................................................................................................................................. 2

I.  Glaceau Misstates the Standard for a Preliminary Injunction in Trademark Cases ........... 2

II. Glaceau Cannot Succeed on the Merits of Its Trade Dress Claim ..................................... 3

      A. The Strength of Plaintiff's Trade Dress ....................................................... 4

      B. Degree of Similarity Between the Trade Dresses ........................................ 5

      C. Ecosentials Adopted Its Packaging in Good Faith ....................................... 9

      D. Glaceau Has Not Shown Proximity or Ability to Bridge the Gap ............. 10

      E. Actual Confusion ....................................................................................... 11

      F. Quality of Ecosentials' Goods ................................................................... 11

      G. Sophistication of Customers ...................................................................... 11

III. Glaceau's Federal Dilution Claim Fails .......................................................................... 11

IV. Glaceau Cannot Succeed On Its State Dilution Claim .................................................... 12

V.  Glaceau Cannot Meet The Remaining Requirements for Injunctive Relief .................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Bristol-Myers Squibb v. McNeil P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) ......................... 6, 8, 9

*Caliente Cab Rest. Co. v. Caliente Cafe Rest. & Bar, Inc.*, No. 11 CV 327(RJD)(RML),
    slip op. (E.D.N.Y. July 29, 2011) ................................................................................... 13-14

*Doninger v. Niehoff*, 527 F.3d 41 (2d Cir. 2008) ................................................................. 2-3, 11

*eBay Inc. v. MercExchange*, 547 U.S. 388 (2006) ....................................................................... 13

*Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997) .................................. 10

*Glaceau Brands, Inc. v. Beverage Marketing USA, Inc.*, No. 02 Civ. 3227 (JSR), 2002
    U.S. Dist. LEXIS 7763 (S.D.N.Y. May 1, 2002) ..................................................................... 4

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997) .......................... 3

*Life Indus. Corp. v. Star Brite Distributing*, 31 F.3d 42 (2d Cir. 1994) ........................................ 7

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir.
    2005) ....................................................................................................................................... 12

*Louis Vuitton Malletier v. Dooney & Bourke*, 454 F.3d 108 (2d Cir. 2006) ............................... 12

*Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65 (2d Cir. 1994) ................................. 11

*Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ......................................................... 12

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000) ................................................ 7

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305
    (S.D.N.Y. 2010) ...................................................................................................................... 14

*Nora Beverages, Inc. v. Perrier Group of America*, 269 F.3d 114 (2d Cir. 2001) ................. 3, 15

*Nora Beverages, Inc. v. Perrier Group of America*, 164 F.3d 736, 743 (2d Cir. 1998)………….4

*Paddington Corp. v. Attiki Importers & Distr.* 996 F.2d 577 (2d Cir. 1993) ................................ 5

*Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir. 1961) .......................................... 3

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261 (E.D.N.Y. 2011) ................ 13

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ................................................................. 13, 14

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998) .......................................... 10

*U.S. Polo Ass'n v. PRL USA Holdings, Inc.,* __F. Supp. 2d__, 2011 WL 1842980 (S.D.N.Y. May 13, 2011) ................................................................................................................ 13, 14

*University of Texas v. Camenisch,* 451 U.S. 390 (1981) ................................................................ 4

*Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009) ................................................. 2, 12

**Statutes**

18 U.S.C. §1125(c)(4)(b) ............................................................................................................. 12

Defendant Ecosentials LLC ("Ecosentials") hereby submits this memorandum of law in opposition to Plaintiff Energy Brands Inc. d/b/a/ Glacéau's ("Glaceau") application for a preliminary injunction.

## INTRODUCTION

This is not a case about customer confusion.  This is a case about the Coca-Cola Company's use of the legal process to fend off the introduction of a disruptive, game-changing technology that poses a fundamental threat to a product line it paid $4.2B to acquire in 2007.  The American public is quickly losing interest in pre-made, sugary beverages like Vitamin Water, which are expensive, arrive on pallets transported over large distances by diesel guzzling trucks, and come in disposable bottles that wind up in landfills.  The future is green, custom, healthy and local - a future that Ecosentials, a tiny startup from Arizona, is poised to seized.  Glaceau's parent company, beverage behemoth Coca-Cola, cannot allow that to happen, so it has directed Glaceau to ask this Court to block Ecosentials' entry into the market before a trial on the merits.

Glaceau's assertions regarding customer confusion are baseless and unsupported by any evidence apart from the lay opinion of its brand manager, an individual who unsuccessfully sought an offer to come work for Ecosentials.  The packaging for Vitamin Squeeze and Vitamin Water look nothing alike, and Glaceau does not present any evidence, e.g., customer surveys or expert opinion, that suggests that customers upon viewing the two products will tend to think that there is some affiliation between the two.  Glaceau's argument seems to boil down to "we have successfully defended our trade dress in this Court several times before, so the Court should just skip ahead to the injunction."  What is curious about this approach is that the elements that Glaceau has previously stated to this Court are "key" to its "distinctive" look and feel are

1

completely absent from its moving papers in this case.  This is because Ecosentials is not using the distinctive elements of Glaceau's trade dress.  Rather, Ecosentials is using its own unique and distinctive design elements combined with certain stock and conventional elements, which have already been approved by Glaceau for other competing products.

The stark visible differences between the parties' respective trade dress is reason enough to deny Glaceau's application for a preliminary injunction.  What is more, granting the sought-for injunction would be a death sentence for Ecosentials.  Ecosentials is a venture-funded startup at the most vulnerable stage in its life-cycle - product introduction.  The injunction sought by Glaceau would poison Ecosentials' fragile relationships with established retailers like Safeway, it would bring Glaceau's fundraising to a halt, and it would prevent Ecosentials' from making hires that are critical to its survival at this stage.  The balance of hardships in this matter tips decidedly in Ecosentials' favor.  Glaceau's application for a preliminary injunction should be denied.

## ARGUMENT[1]

### I. Glaceau Misstates the Standard for a Preliminary Injunction in Trademark Cases

Glaceau's moving papers recite the familiar standard applicable to prohibitory injunctions: irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships that tip decidedly in favor of the plaintiff.  *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 242 (2d Cir. 2009).  Prohibitory injunctions are appropriate when the movement seeks to maintain the status quo for trial.  Here, however, Glaceau seeks to alter the status quo by requiring Ecosentials to pull product off store shelves.  "When the movant seeks a "mandatory" injunction — that is, as in this case, an injunction that will alter rather than maintain the status

---

[1] Defendant's statement of facts supporting this Argument is incorporated in the accompanying declarations of Michael J. Curley and William McKay.

2

quo — she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citation omitted). As Ecosentials shows below, Glaceau cannot even carry its burden of showing a likelihood of success on the merits, much less the required <u>clear</u> or <u>substantial</u> likelihood.

## II. Glaceau Cannot Succeed on the Merits of Its Trade Dress Claim

In order to succeed on its trade dress claim, Glaceau must show that its trade dress is (1) not functional, (2) either inherently distinctive or has acquired secondary meaning[2] and (3) that the allegedly infringing product is likely to confuse consumers as to its source or sponsorship. *Nora Beverages, Inc. v. Perrier Group of America*, 269 F.3d 114, 118-119 (2d Cir. 2001). Likelihood of confusion is determined according to the multi-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961). A fair application of the *Polaroid* factors tilts decidedly in Ecosentials' favor, but amidst the minutia of the *Polaroid* factors it is vital that the Court remain focused on the crux of this dispute, which is, <u>will a consumer who sees a Vitamin Squeeze bottle on the shelf at Safeway believe that it was made by Glaceau?</u> "When evaluating [trade dress] claims, courts must not lose sight of the underlying purpose of the Lanham Act, which is protecting consumers and manufacturers from deceptive representations of affiliation and origin." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 375 (2d Cir. 1997). With this fundamental inquiry in mind, no reasonable fact finder could find infringement in this case.

---

[2] At this preliminary, pre-discovery stage Ecosentials focuses on likelihood of confusion and the requirements for injunctive relief. Ecosentials reserves and does not waive the right to revisit inherent distinctiveness, secondary meaning, functionality, or any other issue later in this proceeding or later in the case as discovery progresses.

3

A.     **The Strength of Plaintiff's Trade Dress**

Glaceau seeks to monopolize common, generic or descriptive elements of beverage labeling that are used by many competitors in the marketplace.  In fact, Ecosentials has acquiesced to other competitors using the elements Glaceau claims are "distinctive", for example, "clean" all lowercase font to present a brand name, a nutritional "matrix,  and a largely two-toned label.  McKay Decl. ¶¶ 20-21.  Critically, the market is full of competing packaging using these features <u>together</u> to create an overall impression that is more similar to Glaceau's packaging than Vitamin Squeeze.  *Id*.  Trade dress that merely conforms to well-established industry custom is not protectable.  *Nora Beverages, Inc. v. Perrier Group of America*, 164 F.3d 736, 743 (2d Cir. 1998).

To establish distinctiveness, Glaceau directs the Court to its three previous successful injunctions: *Glaceau I*, *Glaceau II* and *Glaceau III*.  These opinions are not evidence, and they are certainly not binding on Ecosentials.  In fact, *Glaceau II* and *Glaceau III* contain no conclusions of law at all, and in *Glaceau I*,  Judge Rakoff cautions that his preliminary conclusions, in the context of a TRO, were rendered "… without prejudice to any subsequent findings after the evidentiary hearing."  *Glaceau Brands, Inc. v. Beverage Marketing USA, Inc.*, No. 02 Civ. 3227 (JSR), 2002 U.S. Dist. LEXIS 7763 at * 2 (S.D.N.Y. May 1, 2002).  Indeed, findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits, even as to the original parties.  *See University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).  Moreover, *Glaceau I* actually indicates that a key part of Glaceau's trade dress is descriptive or functional, and not distinctive.  Judge Rakoff noted that the Glaceau label consists of "a white label with a color band reflecting the corresponding color of the waters…"  *Glaceau Brands*, 2002 U.S. Dist. LEXIS 7763 at * 2.  Judge Rakoff recognized that the purpose of Glaceau's colored label is to describe the color and flavor of the beverage

4

within the bottle, which is a common practice is the beverage industry. *Id.*; McKay Decl. ¶ 22. Descriptive colors for beverage containers are not inherently distinctive, particularly where, as here, it has become industry practice to label beverage containers according to the color or flavor of the drink they contain. *Paddington Corp. v. Attiki Importers & Distr*. 996 F.2d 577, 583 (2d Cir. 1993) ("[f]or example, packaging lime-flavored soda in green twelve-ounce cans is so common in the soft drink industry that such packaging probably is not inherently distinctive…").

To extent that Glaceau believes that mere use of the word "vitamin" infringes its "distinctive" trade dress, this argument is unavailing. "Vitamin water" has become a generic term for a vitamin enhanced beverage, and accordingly, cannot be monopolized by Glaceau. *Nora Beverages, Inc.*, 164 F.3d at 744 ("[c]ompetitors are free to use an owner's trade dress if it has become generic over time even if it was originally distinctive.")  In fact, during prosecution of one of Glaceau's trademarks, the trademark Examiner located many examples of the use of the phrase "vitamin water" as a generic description of vitamin enhanced beverages. Curley Decl., Ex G at 6-14; Ex. H at 6-12. A cursory internet search indicates that the phrase continues to be used generically. *Id.*, Exs. I and J.

**B.     Degree of Similarity Between the Trade Dresses**

As is set forth in detail in the attached Declaration of William McKay, the trade dress for Vitamin Water and Vitamin Squeeze look nothing alike. Specifically, the two bottles are starkly different, even in the areas identified in Glaceau's complaint and moving papers. As can be seen below, where Vitamin Water uses a stark two-tone label with a metalized color zone on a clear bottle, Vitamin Squeeze uses a gradual color transition from a highly saturated flat color region to a light colored region, and both regions are bounded by gray areas on an opaque bottle. McKay Decl. ¶ 14. Where Glaceau presents the brand name in one line, using a conventional font, with one word in light typeface and the other in bold type face, Ecosentials presents its

brand name in two lines, with both words bolded, and with a highly stylized font incorporating a unique "splash" graphic. *Id*. at ¶¶ 16 - 18. Where regular, sugar-added Vitamin Water presents its brand name in vertical, lower cased text, off to the side, bridging both a light and colored region, Vitamin Squeeze includes a flavor designator in the lower middle of the bottle over a full-color region, in all capitals. *Id*. at ¶¶ 12, 16. Contrary to Glaceau's assertion, the fonts the parties use for their respective brand names are completely different. *Id*. at ¶¶ 16 - 18. While Ecosentials does use the word "Vitamin" in its label, the fact that Ecosentials' product is clearly labeled with its own prominent "Vitamin Squeeze" logo cuts **against** Glaceau's claims of confusion. *Bristol-Myers Squibb v. McNeil P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992) (finding that despite similar trade dress elements, the prominence of the "Tylenol PM" trademark weighed heavily against any confusion with "Excedrin PM"). Additionally, the catchphrase "A **SQUEEZE** IS ALL YOU NEED" prominently positioned on the back panel emphasizes that Vitamin Squeeze comes from a different manufacturer than Vitamin Water. McKay Decl. ¶ 15.

6



As can be seen below, the bottles are different in countless other ways. For example, the Vitamin Squeeze bottle is smaller than the Vitamin Water bottle and has a rounded, hour-glass shape, rather than a bullet shape, like the Vitamin Water bottle. McKay Decl. ¶ 12. *See Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000) (finding no Lanham Act violation where differences in package size and shape eliminated possibility of confusion.). Vitamin Squeeze has a full color "racing stripe" graphic that runs the entire length of the bottle, indicating the number of servings. McKay Decl. ¶ 15. The Vitamin Squeeze color region is only at the front of the bottle, and is interrupted by a white back panel full of informational text. *Id*. Additionally, the Vitamin Squeeze bottle has two full color graphics: a fruit splash graphic at the top of the bottle, and a hand squeezing a bottle into a glass of water at the bottom of the bottle.

7

*Id*. at ¶12.  In contrast, Glaceau's label is stark and generic-looking.  *See Life Indus. Corp. v. Star Brite Distributing*, 31 F.3d 42, 46 (2d Cir. 1994) (finding no likelihood of confusion between a "sophisticated" label full of informational text and graphics and a similar but comparatively simple label); *Bristol-Myers Squibb,* 973 F.2d at 1046 ("[t]he presence and prominence of markings tending to dispel confusion as to the origin, sponsorship or approval of the goods in question is highly relevant to an inquiry concerning the similarity of the two [trade] dresses").

 

In cases against previous accused infringers, Glaceau has adopted a constantly shifting position on what exactly are the "key" distinctive elements of trade dress that Glaceau feels are entitled to production.  Against Energy Multi-Vitamin Water Corp., Glaceau described its 20-ounce, bell shaped, wide-mouthed, clear bottle as a "key" element of its trade dress.  Curley Decl. Ex. A at 8.  Against PepsiCo, the "key" elements included a clear top, and the brand name written in alternating bold and non-bold font.  Curley Decl. Ex. B at 8.  Against National Beverage Corp., the "key" elements included a vertical presentation of the Vitamin Water brand name.  Curley Decl. Ex. C at 5.  Against Vogue International, the "key" elements included black text bridging the colored and white bands on the label.  Curley Decl. Ex. D at 8.  Ecosentials'

8

product has **none** of the elements that Glaceau has previously argued to this Court constitute the "key" aspects of its trade dress. *See generally* McKay Decl. ¶¶ 12 -19.

"[I]n a trade dress infringement case the question is not how many points of similarity exist between the two packages but rather whether the two trade dresses create the same general overall impression." *Bristol-Myers Squibb,* 973 F.2d at 1046 (citation omitted). While determining the overall impression conveyed by a product package can be a daunting task, it is not difficult here. Glaceau has repeatedly and publicly described the overall impression its label is designed to make. In fact, it has done so to this Court. In its previous Complaints, Glaceau consistently described the overall look of its packaging as "clinical" and "medicinal." Curley Decl. Ex. A at 8; B at 8; C at 5; D at 6; E at 6. Despite defining the look and feel of its trade dress according to these terms in at least five previous cases, the terms "clinical" and "medicinal" appear **nowhere** in Glaceau's papers in this case. This is simply because no reasonable observer would describe Vitamin Squeeze as "clinical" or "medicinal." Vitamin Squeeze was purposefully designed to **not** look like a drug prescription label. McKay Decl. ¶ 19. Rather, the busy graphics on Vitamin Squeeze bottles convey an opposite overall impression of bright flavors, physical activity, and fun. *Id.* Since the overall impression conveyed by Vitamin Squeeze is radically different from Glaceau's **own description** of the look and feel of its product, is clear that there can be no likelihood of confusion.

### C.  Ecosentials Adopted Its Packaging in Good Faith

Ecosentials set out to design a unique and distinctive package worthy of a new product category, and it succeeded in doing so by producing a package that is unlike anything else on the market. As part of this process, Ecosentials' designers were specifically directed to not "copy" the distinctive features of Glaceau's packaging design, or anyone else's. McKay Decl. ¶ 10.

9

Glaceau's allegations of "bad faith" rely almost exclusively on internal, closely-held investor oriented material and mock-up concept bottles that were never introduced to the consuming public. *Id*. at ¶¶ 6 - 9. In fact, by the time the Vitamin Squeeze bottles got to market, Ecosentials had redesigned them twice to avoid any possibility of confusion with Glaceau's products. *Id*. at ¶10. Contrary to Glaceau's claims, good faith offers to avoid confusion by Ecosentials are not proof of bad faith.

It is not bad faith to introduce a product that competes with Glaceau's. It is not even bad faith to copy unprotectable aspects of Glaceau's product or its packaging. It is only bad faith to attempt to mislead consumers as to the source of Ecosentials' product. "The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998). As the Second Circuit has explained, "[i]t cannot automatically be inferred that intentionally copying a plaintiff's trade dress is for the purpose of deceiving or confusing consumers as to the source of the product…Indeed, copying in order to market a functionally equivalent alternative product might well benefit consumers, which is one of the aims of the Lanham Act." *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 1005 (2d Cir. 1997). Here, Ecosentials has created a functionally similar, but superior product, in a clearly distinct package designed to avoid customer confusion. Bad faith should not be inferred under these circumstances.

### D. Glaceau Has Not Shown Proximity or Ability to Bridge the Gap

Vitamin Squeeze is a super-concentrate where Vitamin Water is a pre-mixed beverage. McKay Decl. ¶¶ 3, 5, 23. At Ecosentials' current customer, Safeway, the two products are shelved in different locations in the store. *Id*. at ¶ 23. Accordingly, while Ecosentials hopes to convert Glaceau's customers to Ecosentials' superior alternative, Glaceau has not established competitive proximity. Additionally, Glaceau has not established that it has any intention to

10

compete in the new market for functional beverage concentrates. These factors tip in Ecosentials' favor.

### E. Actual Confusion

Glaceau has produced no evidence of actual confusion. Neither has Glaceau introduced any evidence or even expert opinion regarding confusion. Instead, Glaceau relies only on the declaration of its brand manager, Todd Smith, who sought and was denied employment at Ecosentials. McKay Decl. ¶ 24. The lack of survey evidence militates against a finding of actual confusion. *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994). This factor tips in Ecosentials' favor.

### F. Quality of Ecosentials' Goods

Glaceau has introduced no evidence that the quality of Ecosentials' goods is inferior, so this factor favors Ecosentials.

### G. Sophistication of Customers

Ecosentials does not disagree with Glaceau's assertion that both parties' customers are relatively unsophisticated. Thus, this factor is neutral.

With the possible exception of customer sophistication, all of the *Polaroid* factors favor Ecosentials. Glaceau cannot carry its burden of showing likelihood of success on the merits. It clearly cannot not do so to the "clear" or "substantial" standard required for mandatory injunctions. *Doninger,* 527 F.3d at 47.

## III. Glaceau's Federal Dilution Claim Fails

Glaceau's moving papers assert that "the **vitamin**water trade dress is a registered trademark under the Lanham Act on the Principal Register." Plaintiff's Memorandum of Law at 14. This statement is flatly false. Almost none of Glaceau's trade dress is registered on the principal register. While some of Glaceau's marks are registered, a review of Patent and

Trademark Office records indicates that Glaceau has only registered two bottle label designs. Curley Decl. Ex. F. Both registered designs require the text "Vitamin Water" written vertically on the label, which Ecosentials does not do. The vast majority of the features Glaceau has called its trade dress, e.g., the bell-shaped wide-mouth bottle, the two-toned color scheme, the medicinal or clinical overall look, etc., are unregistered. Where, as here, a party is asserting dilution of unregistered trade dress mixed with registered elements, that party has the burden of proving that "the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks." 18 U.S.C. §1125(c)(4)(b). This is a burden that Glaceau has not even tried to carry.

Moreover, a federal dilution plaintiff for unregistered trade dress is required to show actual dilution. Merely showing a similarity between trade dress is insufficient to establish dilution as a matter of law. *Louis Vuitton Malletier v. Dooney & Bourke*, 454 F.3d 108, 118-19 (2d Cir. 2006) *citing Moseley v. V. Secret Catalogue, Inc.,* 537 U.S. 418 (2003). Again, Glaceau does not even attempt to make this necessary showing.

### IV.     Glaceau Cannot Succeed On Its State Dilution Claim

To prevail under New York's Gen. Bus. Law §360-1, Glaceau must show a likelihood of confusion under the same test applied to a Lanham Act claim, and in particular, must show that the marks are similar. *Louis Vuitton Malletier,* 454 F.3d at 119; *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 539 n.5 (2d Cir. 2005). For the reasons set forth above with respect to Glaceau's Lanham Act claim, Glaceau cannot make such a showing.

### V.     Glaceau Cannot Meet The Remaining Requirements for Injunctive Relief

Glaceau relies on the outdated presumption of irreparable harm set forth in *Zino Davidoff,* 571 F.3d at 246 (stating that "a plaintiff who establishes that an infringer's use of its trademark

12

creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury.") (citation omitted).  Presuming irreparable harm upon a showing of likelihood of confusion is no longer permissible.  In *eBay Inc. v. MercExchange*, 547 U.S. 388 (2006), relying on "well-established principles of equity" a unanimous Supreme Court rejected the Federal Circuit's practice of issuing injunctions in patent matters as a matter of course once infringement had been determined.  *Id*. at 391.  The Court's return to traditional equitable principles is consistent with its treatment of automatic injunctions in the copyright context: "this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."  *Id*. at 392-393.

  The Second Circuit has since relied on *eBay's* teaching to abrogate the presumption of irreparable harm upon a showing of infringement in copyright cases, and stated that "*eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions **in any context**."  *Salinger v. Colting*, 607 F.3d 68, 77-78 (2d Cir. 2010) (emphasis added).  Judge Sweet of this Court, in accordance with the teaching of the *Salinger* Court, applied *eBay*'s traditional test for injunctions to a Lanham Act case stating, "[t]his Court agrees with other courts in this Circuit to have considered *Salinger's* applicability to trademark actions that there appears to be no principled reason not to adopt the newly announced standard in the trademark context…[T]he presumption of irreparable injury in trademark cases is no longer appropriate."  *U.S. Polo Ass'n v. PRL USA Holdings, Inc.*, __F. Supp. 2d__, 2011 WL 1842980 at * 19 (S.D.N.Y. May 13, 2011); *accord Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 265 (E.D.N.Y. 2011); *Caliente Cab Rest. Co. v. Caliente Cafe Rest. & Bar,*

*Inc.*, No. 11 CV 327(RJD)(RML), slip op. at 1 (E.D.N.Y. July 29, 2011); *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010).

The correct standard for injunctions in trademark cases in the Second Circuit is the standard set down by the *Salinger* Court.  A trademark plaintiff is entitled to a preliminary injunction only if it shows: "a likelihood of success on the merits and that: (1) 'he is likely to suffer irreparable injury in the absence of an injunction'; (2) 'remedies at law, such as monetary damages, are inadequate to compensate for that injury'; (3) the balance of hardships tips in his favor; and (4) 'the public interest would not be disserved by the issuance of a preliminary injunction.' *U.S. Polo Association,* 2011 WL 1842980 at * 19, *quoting Salinger*, 607 F.3d at 80.

It is beyond doubt that the balance of hardships tips strongly in Ecosentials' favor.  Granting Glaceau's injunction, including its product recall provisions, would permanently exclude Ecosentials from the market.  As a venture-funded startup launching a new product into a new product category, Ecosentials is at its most vulnerable right now.  Any interruption or threatened interruption in its sales activities will prevent Ecosentials from signing new customers, which in the retail grocery market, evaluate new product once a year for inclusion into their yearly sales plans.  This means that if Ecosentials loses its ability to provide product now, in time to be on shelves for the first quarter of next year, the result will be a twelve-month delay in its sales activities.  By the time Ecosentials gets in front of these customers again, its newcomer advantage will be lost for good, and it will find itself competing with other, better financed entrants to this market.  Additionally a discontinuity in sales will poison Ecosentials' fragile relationships with its existing customers and outside sales force, will prevent it from hiring the employees that it needs to grow at this critical time, and will bring critical fundraising

efforts to a standstill.  An injunction that interrupts sales is, simply put, a death sentence for Ecosentials.  McKay Decl. ¶ 25.

Moreover, the injunction sought by Glaceau thwarts the strong public policy underlying the Lanham Act favoring vigorously competitive markets.  *Nora Beverages, Inc*., 269 F.3d at 119.  Vigorous competition serves the public interest by providing the public with more choices and lower prices.  The public interest is best served by letting the public choose whether Glaceau or Ecosentials succeeds in the market.  That determination should not be made in a summary proceeding before this Court.

For the foregoing reasons, Glaceau's Application should be denied.

Dated: October 17, 2011

Respectfully submitted,

DAVIS & GILBERT LLP

By: ___/s/ Neal H. Klausner_____
    Michael C. Lasky (mlasky@dglaw.com)
    Neal H. Klausner (nklausner@dglaw.com)
    Shirin Keen (skeen@dglaw.com)
    1740 Broadway
    New York, NY 10019
    Telephone: (212) 468-4800
    Facsimile:  (212) 468-4888

    Michael J. Curley
    (michael.curley@quarles.com)
    QUARLES & BRADY LLP
    1 S. Church Ave., Ste 1700
    Tucson, Arizona 85701-1621
    (520) 770-8768
    (*Pro hac vice* admission application to be filed)

*Attorneys for Defendant Ecosentials LLC*